IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROLYN M. HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05-cv-00053-B |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq.*, Carolyn M. Hicks ("Hicks") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. Because the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained, the court concludes that the Commissioner's decision should be affirmed.

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

## II.   ADMINISTRATIVE FINDINGS

Hicks, age 45 at the time of the hearing, has not engaged in substantial gainful work activity since the alleged onset date of disability, April 1, 2001, arising from alleged emphysema and problems associated with her back, ankle and vision. Prior to this SSI application, filed on December 23, 2002, Hicks filed at least 12 unsuccessful applications between 1986 and 2001.

The ALJ found that medical evidence substantiated as severe impairments only her *status post compression fracture of lumbar spine L-1, and right subtalar joint fracture, status post fusion x 2*. After considering them individually and in combination, he concluded that they did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P. The ALJ deemed not fully credible Hicks' allegations of pain and functional limitations. Hicks had no past relevant work but retained, the ALJ found, the residual functional capacity ("RFC") to perform other work that exists in significant numbers in the national economy. Accordingly, the ALJ concluded that Hicks is not disabled.[1]

---

[1] R. 18. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

### III.   ISSUES

Contrary to explicit instructions, Hicks filed a brief which does not include a "Statement of the Issues" but instead identifies this general statement challenging the ALJ's determination: "Did the Administrative Law Judge fail to give the Plaintiff's evidence proper weight in finding she was not disabled under the provisions of Section 1614 of the Social Security Act and appropriate provision thereof?"[2] **Plaintiff's counsel is advised that hereafter similar non-compliance with this court's order will result in rejection of the brief.**

On the ninth page of her ten-page brief, captioned *Summary and Conclusion*, Hicks finally cites as reversible error, albeit in a conclusory and cursory fashion, the ALJ's application of the pain standard and credibility analysis; his reliance on vocational expert testimony; and his alleged failure to develop the record fully and fairly.

### IV.   DISCUSSION

Contentions regarding the ALJ's development of the record and his reliance on vocational expert testimony are too patently unsupported to merit any discussion.[3] Hicks devotes more than

---

[2]*See* Plaintiff's Brief at 1 ("*Pl.'s Br.*")(Doc. 9, filed May 31, 2005) *and* Order filed January 26, 2005 (Doc. 3)(directing Plaintiff to a brief in support of her claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution"). The Plaintiff was specifically advised that "general statements of issues such as 'the ALJ's decision is not supported by substantial evidence' will not be considered by the court." *See* Order at n.1.

[3]The entirety of Hicks' bootless attack on the ALJ's development of the record is a three-sentence paragraph with this argument at its core: "[b]ecause...[her] counsel [was] not retained until the record [was] made", Hicks contends that her counsel and the ALJ "have to go with so much less than an experienced, prepared record." (*Pl.'s Br.* at 9).

Hicks' unprofessional attack on the ALJ's reliance on a vocational expert displays incredible
(continued...)

half of her woefully deficient brief to reproducing verbatim her testimony explaining that she cannot work because of pains and problems relating to her back, ankle, eyes, and breathing. In lieu of specifying errors or deficiencies in the ALJ's consideration of her subjective complaints or the medical record, after reciting correctly the Eleventh Circuit's controlling pain standard, Hicks concludes: "As noted, the ALJ's thirteen page decision is complete and replete with generalizations that violate this cardinal holding."[4] What follows are three sentences apparently intended – in their entirety – as the support for this allegation of error:

> The applicant presented and presents to the Social Security Administration on the Code's Disability Law one of society's tragic phenomenon. This is a lady with a sixth grade education who lived to be forty-five years of age and because of life and circumstances over which she had no control and played no abnormal part in, found herself in such physical mental and painful condition that she has no alternative but

---

[3](...continued)
insensitivity to his and other disabled claimants and amounts to castigating the messenger and the message without identifying any error for this court's analysis:

> The so-called "Vocational Expert" can relate statistics drawn from magical studies and computations, but such compilations do not equate with the efforts of record that the applicant made to find such statistical employment. It is likely that such compilations do not factor in employers' concerns for such matters as increased "Workers' Compensation risks, reflection of company's public appearance with *uneducated, unattractive, crippled personnel.* The applicant's living experience is that *such employers only put up with her multiple limitations for a very few weeks.*

*Pl.'s Br.* at 9 (*emphasis added*).

    Hicks plainly errs in suggesting that vocational expert testimony must be based on statistics that take into account a claimant's ability to actually get hired, her past attempts in obtaining employment or hiring practices of employers. At the fifth step of the sequential evaluation process, the burden shifts to the Commissioner to show other work that a claimant can perform, and one way to satisfy this burden is through the use of vocational expert testimony. *See* 20 C.F.R. §§416.960 and 416.966; *see also Wilson v. Barnhart*, 284 F. 3d 1219 (11th Cir. 2002).

[4]*Pl.'s Br.* at 8.

4

to look to society and society's agents to survive. This claimant has made heroic efforts to muster some menial employment, but simply does not have the wherewithal to do so.[5]

Judicial determination of claimed error in the ALJ's non-disability determination cannot rest on paternalistic notions of perceived societal wrongs, failures, or obligations. The utter disregard for the evidentiary record and legal standards – exemplified so clearly by this claimant's advocacy in brief – is reason enough to dismiss as frivolous the claimed error in the ALJ's credibility analysis. Nonetheless, the court has proceeded to examine scrupulously the entire record and readily concurs with the Commissioner that "the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's testimony regarding her subjective complaints, and because his credibility finding is supported by substantial evidence on the record as a whole, his credibility finding should be affirmed."[6]

The ALJ concluded that "the preponderance of the evidence does not support [Hicks'] allegations of totally incapacitating pain and other symptoms, and that any statements regarding severity, frequency and duration of her symptomalogy are overstated."[7] He articulated plainly his reasons for discrediting Hicks' subjective complaints:

> [T]he Administrate Law Judge finds that the claimant's statements concerning her physical impairments and the impact on her ability to work are questionable, in light of the fact that she has not sought any regular and ongoing medical attention for her impairments since 1996, and in light of her current daily activities of living that are consistent with some types of work-related activity. The evidence further shows that the claimant has not been observed to have any ongoing neurological deficits of the

---

[5]*Pl.'s Br.* at 8-9.

[6]*Def.'s Br.* at 7.

[7]R. 16.

upper or lower extremities, such as reflex and sensory abnormalities, lack of motor coordination, or decreased muscle strength. Finally, no joint deformities, muscle atrophy, substantial limitation of range of motion, or significant spasm have been documented by the evidence of record. In fact, it is more than reasonable to expect that the claimant would seek medical treatment on a regular and persistent basis if she, in fact, experienced pain in the incapacitating severity, frequency, and duration alleged. Moreover, the undersigned notes that the record is void of any hospital admissions during the period under consideration.[8]

Substantial evidence supports the ALJ's assessment. In a consultative medical evaluation report dated April 2, 2003, Dr. Mark B. Ellis, D.O. concluded that Hicks "appears to function very well here in the office although she does have a limp", "is able to ambulate well", "is able to place her shoes and socks on without any apparent difficulty", and "did rise from the chair although she did use her hands to push up from the chair". Dr. Ellis opined that her vision problems could be corrected with glasses and that "she can care for her other medical problems including stopping smoking."[9] Upon consideration of the April 2003 evaluation by Dr. Ellis and a June 2003 vision examination performed by Dr. Nicholas E. Barreca, the State Agency physician opined that despite her impairments, Hicks was able to occasionally lift 20 pounds, stand and/or walk for a total of 6 hours, sit (with normal breaks) for a total of 6 hours, push and/or pull, frequently stoop and kneel, occasionally climb, stoop, crouch and crawl, and perform manipulative functions and see at an acuity of 20/25 using corrective measures.[10]

The ALJ also properly considered the inconsistencies (a) between Hicks' allegation of disabling impairments *and* her failure to seek ongoing medical treatment since 1996, and (b)

---

[8]R. 16.

[9]R. 150-151.

[10]R. 159-165.

between Hicks' allegations of pain and physical limitations *and* her testimony of caring for her personal grooming, shopping, and light housework.[11] While the ALJ may not deny disability benefits based solely upon a claimant's ability to perform minimal daily activities, *see Lewis v. Callahan*, 125 3d 1436, 1441 (11th Cir. 1997), it is unquestioned that he may consider a claimant's daily activities. 20 C.F.R. §404.1529; Social Security Ruling 96-7p; *see also Macia v. Bowen*, 829 F. 2d 1009, 1012 (11th Cir. 1987).

## V.  CONCLUSION

Based on the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's decision is supported by substantial evidence and reflects a correct application of the applicable law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 27th day of March, 2006.

/s/ Delores R. Boyd

DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE

---

[11]R. 178.